UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ARTHUR SHARIFULLIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-cv-728 (APM) |
| ) | |
| ANTONY BLINKEN et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

**I.**

The so-called "EB-5" program authorizes visas for immigrants who contribute to "employment creation" in the United States by investing in new commercial enterprises. 8 U.S.C. § 1153(b)(5); 8 C.F.R. § 204.6. To qualify for a visa under this program, an applicant must invest a certain amount of capital (at least $1,000,000 generally or at least $500,000 into a "targeted employment area") into the new commercial enterprise, which must create full-time employment for "not fewer than 10 United States citizens or aliens lawfully admitted for permanent residence or other immigrants lawfully authorized to be employed in the United States (other than the immigrant and the immigrant's spouse, sons, or daughters)." 8 U.S.C. § 1153(b)(5)(A)(ii). Once the applicant has invested the requisite funds, she must file a Form I-526 (Petition for Alien Investor) with U.S. Citizenship and Immigration Services ("USCIS"). *Id.* § 1153(b)(5); 8 C.F.R. § 204.6. Once USCIS approves the petition, the next step for an applicant residing outside the United States is to acquire lawful permanent residence by submitting a Form DS-260 (Immigrant Visa Electronic Application) with the State Department's visa-processing center. *Immigrant Investor Visas*, TRAVEL.STATE.GOV, https://travel.state.gov/content/travel/en/us-visas/immigrate

/immigrant-investor-visas.html (last visited Feb. 23, 2022). After that, the State Department eventually schedules a visa appointment for the applicant and forwards the case to the appropriate U.S. Embassy or Consulate for an interview. *Id.* If the applicant is approved, she is issued an immigrant visa and may immigrate to the United States. *Id.*

Plaintiff Artur Sharifullin, a Russian citizen and national who wishes to immigrate to the United States, seeks to compel adjudication of his visa application pursuant to the EB-5 program. First Am. Compl., ECF No. 9 [hereinafter Am. Compl.], ¶ 1. He alleges that he filed an immigrant investor visa petition in August 2015; that USCIS approved his petition and forwarded his case to the State Department for processing in November 2016; and that the State Department opened his immigrant visa case in March 2017. *Id.* ¶¶ 23–25. He then completed his Form DS-260 and submitted the required paperwork, and in November 2019 he was notified that the State Department had scheduled his case for an interview the following month at the U.S. Embassy in Moscow. *Id.* ¶¶ 26–27. He alleges that, following his interview, the State Department did not render a decision on his application but instead placed him in "administrative processing," and that his application has effectively remained in that state ever since. *Id.* ¶¶ 29–44.

Plaintiff filed this action in March 2021, bringing a claim under the Mandamus Act, 28 U.S.C. § 1361; an unreasonable-delay claim under the Administrative Procedure Act ("APA"); and a claim for fees under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504; 28 U.S.C. § 2412. Compl., ECF No. 1, ¶¶ 28–41. Three months after he initiated suit, however, on June 30, 2021, Congress's most recent reauthorization of the EB-5 program expired. *See* Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 104, 134 Stat. 1182, 2148 (2020). Congress has yet to renew the program. After congressional authorization for the program lapsed, Plaintiff filed an amended complaint, this time asserting relief only under the APA for the alleged unreasonable

delay in processing his DS-260 immigrant visa application. Am. Compl. ¶¶ 45–65. He names as defendants the Department of State; Antony Blinken, the Secretary of State; Abigail Rupp, the Deputy Chief of Mission, Consular Section, at the U.S. Embassy in Moscow; a Consular Officer in the same section of the embassy in Moscow; and Patrick Walsh, the Consul General, Consular Section, at the U.S. Embassy in Warsaw, Poland (collectively, "the Government"). *Id.* ¶¶ 2–6. The Government has moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for lack of jurisdiction and failure to state a claim, respectively. Mot. to Dismiss Am. Compl. & Mem. in Supp. Thereof, ECF No. 10 [hereinafter Defs.' Mot.].

For the reasons that follow, the court grants the Government's motion and dismisses this action as moot.

## II.

When deciding a motion under Rule 12(b)(1), a court must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). Because the court has "an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," however, the factual allegations in the complaint "will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Grand Lodge of Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13–14 (D.D.C. 2001) (internal quotation marks omitted). To that end, the court may consider "such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case." *Scolaro v. D.C. Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000). Thus, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus

the court's resolution of disputed facts." *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (internal quotation marks omitted).

Mootness is one ground for dismissal for lack of subject matter jurisdiction under Rule 12(b)(1). *Indian River Cty. v. Rogoff*, 254 F. Supp. 3d 15, 18 (D.D.C. 2017) ("A motion to dismiss for mootness is properly brought under Rule 12(b)(1) because mootness itself deprives the court of jurisdiction."). "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (internal quotation marks omitted). "A case is moot when the challenged conduct ceases such that there is no reasonable expectation that the wrong will be repeated in circumstances where it becomes impossible for the court to grant any effectual relief whatever to the prevailing party." *United States v. Philip Morris USA, Inc.*, 566 F.3d 1095, 1135 (D.C. Cir. 2009) (internal quotation marks omitted). Stated differently, a case becomes moot when "the court can provide no effective remedy because a party has already obtained all the relief that it has sought." *Conservation Force*, 733 F.3d at 1204 (alteration and internal quotation marks omitted). "The initial heavy burden of establishing mootness lies with the party asserting a case is moot, but the opposing party bears the burden of showing an exception applies[.]" *Honeywell Int'l, Inc. v. Nuclear Regul. Comm'n*, 628 F.3d 568, 576 (D.C. Cir. 2010) (citations and internal quotation marks omitted).

### III.

The Government moves to dismiss for lack of jurisdiction on the basis that Plaintiff cannot satisfy the redressability prong of the Article III standing inquiry because "there exists no ability for the Court to redress the alleged injury" in light of the EB-5 program's reauthorization lapse. Defs.' Mot. at 11; Reply in Further Supp. of Defs.' Mot., ECF No. 16 [hereinafter Defs.' Reply],

at 6. But the relevant doctrine here is mootness, not standing. As the Supreme Court has explained, "the doctrine of mootness can be described as the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness)." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000). Here, "suit was filed before statutory authorization for the EB-5 Regional Center program lapsed." Pl.'s Opp'n at 13. The justiciability question, as the Government appears to recognize at times despite framing its argument primarily in standing terms, is whether "the expiration of the statutory authority has *mooted* the Court's ability to redress" Plaintiff's alleged injuries. Defs.' Reply at 6 (emphasis added).

This court has considered this precise question on two previous occasions: first in *Fang v. Blinken*, No. 21-cv-01705 (APM) (D.D.C.), and again in *Saxby v. Mayorkas*, No. 21-cv-964 (APM), 2022 WL 103176 (D.D.C. Jan. 11, 2022). In both cases, the court concluded that the lapse of the program's reauthorization rendered the plaintiffs' claims moot because the court could no longer provide the requested relief. *Saxby*, 2022 WL 103176, at *1; Minute Order, *Fang v. Blinken*, No. 21-cv-964 (APM) (D.D.C. Oct. 20, 2021). That conclusion applies with equal force here. Plaintiff asks the court to order either the Moscow or Warsaw Embassy to adjudicate his application as of the program's expiration date (June 30, 2021), Am. Compl. ¶ 68(a), but "if [he] mean[s] that the court can *now* compel the agency to adjudicate [his] application[] and grant a visa notwithstanding the program's expiration, that is surely not so." *Saxby*, 2022 WL 103176, at *1. As this court has previously held, "[t]he court cannot compel USCIS to do what Congress has not authorized it to do." *Id.* "The statutory authority for the program on which plaintiff's petition relies to qualify for an EB-5 visa has lapsed; therefore, this Court has no authority to order relief for plaintiff's claim arising from his I-526 petition." *Bromfman v. USCIS*, No. 21-cv-571 (BAH),

5

2021 WL 5014436, at *4 (D.D.C. Oct. 28, 2021).  This conclusion is consistent with numerous other decisions in this Circuit holding cases moot where a program's expiration date has passed.  *See id.* (citing cases).  As the court lacks the ability to grant effectual relief, this matter is moot.  *See Porzecanski v. Azar*, 943 F.3d 472, 479 (D.C. Cir. 2019).[1]

Plaintiff attempts to avoid this conclusion by arguing, first, that the sunset of the EB-5 program is only temporary and so does not destroy the court's jurisdiction.  Pl.'s Opp'n at 11–12.  To ground this argument, he points to bills to reauthorize the program in Congress and to the Government's representations in other litigation.  *See id.*  The court has already addressed—and explained why it is not persuaded by—similar arguments.  In *Saxby*, this court explained that "the court cannot ground its jurisdiction in the mere hope of congressional action."  2022 WL 103176, at *1.  "[T]he mootness doctrine prohibits [courts] from deciding a case if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."  *J.T. v. District of Columbia*, 983 F.3d 516, 522 (D.C. Cir. 2020) (internal quotation marks omitted).  The court cannot premise its jurisdiction on a mere prediction as to what Congress will do.

Plaintiff maintains that he has requested relief that the court can provide notwithstanding the program's lapse, including a declaratory judgment, adjudication of his visa, and payment of attorney's fees.  Pl.'s Opp'n at 11.  He explains that this relief is "either authorized by other authority or only being requested upon a timeframe following statutory reauthorization of the EB-5 Regional Center Program."  *Id.* at 11.  It is not entirely clear what Plaintiff means by this.  But to

---

[1] In reaching this conclusion, the court again "respectfully disagrees with the decision to the contrary in *Nandu v. Renaud*, No. SA CV 21-00643-DOC-KES, 2021 WL 5986917, at *4 (C.D. Cal. Sept. 24, 2021)."  *Saxby*, 2022 WL 103176, at *1.  The court also reiterates its statement in *Saxby* that "[t]his case is not like those in which the court granted relief to a plaintiff prior to expiration of program eligibility and later exercised its equitable powers to enforce such order."  *Id.* at *1 n.1 (citing *Gomez v. Trump*, 490 F. Supp. 3d 276, 286 (D.D.C. 2020)).

the extent "other authority" refers to the Equal Access to Justice Act ("EAJA") and its authorization of attorney's fees, case law is clear that the possibility of a fee award pursuant to the EAJA is not enough standing alone to confer jurisdiction. *Liu v. INS*, 274 F.3d 533, 536 (D.C. Cir. 2001) ("[A]n interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim." (internal quotation marks omitted)). And to the extent Plaintiff suggests this court could fashion relief that orders the agency to adjudicate the application within 30 days *after* program renewal, *see* Am. Compl. ¶ 68(b), for such relief "to be effectual[,] the court would have to speculate that Congress will reauthorize the program." *Saxby*, 2022 WL 103176, at *1. As the court has just explained, it cannot do so. *J.T.*, 983 F.3d at 522.

### IV.

For the foregoing reasons, Defendants' Motion to Dismiss the Amended Complaint, ECF No. 10, is granted in full. A final, appealable order accompanies this memorandum.

Dated: February 24, 2022

Amit P. Mehta
United States District Court Judge